UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 16-cv-24607-HUCK/OTAZO-REYES

GEORGE BENTLEY

    Plaintiff,

v.

MIAMI AIR INTERNATIONAL, INC.

    Defendant.
_____/

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, GEORGE BENTLEY ("Bentley"), by and through his undersigned attorney, pursuant to Fed. R. Civ. P. 56, S.D. L.R. 7.1 and 56.1, hereby files his Statement of Material Facts in Dispute in Support of his Response to Defendant, MIAMI AIR INTERNATIONAL, INC.'s, ("Miami Air"), Motion for Summary Judgment and states as follows:[1]

    1.    BENTLEY is currently 64 years old. (Bentley Dep. 9:5-6). Miami Air began flight operations in October 1991 and Bentley started with the company serving as a Captain from 1991 through 2008. (*Id.* at 15:16-25). Bentley also served as a Captain since he was 31 years old with previous employers (*Id*. at 129:7-16).

    2.    Bentley did take medical leave beginning in October 2008 for a 23-month period for a heart condition. (Bentley Dep. 19-20:20-21). Bentley was cleared by the Federal Aviation Administration to return to flying in August 2010. (*Id.* at 20:6-7). Bentley had to wait several months to get his FAA medical clearance, as the FAA required another medical procedure, and

---

[1] Defendant failed to follow S.D. L.R. 56.1 requiring that the statement of facts be filed as a separate document. Nonetheless, as Defendant placed a statement of facts within the motion, the Plaintiff's Statement of Material Facts in Dispute responds to and corresponds with the Defendant's paragraph numbering in that statement of facts.

Bentley had sick leave, vacation and did some light duty work during this period. (Bentley 21-24). Bentley was 58 years old when he returned from his medical leave in 2010.  (Bentley, 53:11-16).

3. The criterion for requalification is when a pilot could not perform the FAA recurrent training requirements or proficiency check requirements during his or her leave. (Gigliotti, 11:14-25; 14-15). *See also* 14 C.F.R. § 121.400(8).  Bentley did fail his Captain check ride or proficiency check on September 1, 2010. (Bentley, 32:2-23).   Bentley contends that he was not given adequate training to return to the Captain seat because of his age.  (Bentley, 79:2-7; 96:7-15; 105-106:6-1). Bentley was told that all he would be required to do was recurrent training and one practice simulator, which amounted to one (1) day of training and one practice simulator test. (Bentley, 26:21-24; 28:7-12). The normal practice for requalification would have been two weeks of ground school and ten (10) simulator tests. (Bentley, 29:3-6). It was obvious to Bentley that Miami Air wanted to bring him back as a First Officer and not a Captain because of his age. (Bentley, 36:6-9). Bentley contends that Miguel Martin ("Martin"), who was in charge of training, Steve Joffrion ("Joffrion"), Chief of Flight Standards, and John Passwater ("Passwater"), Chief Pilot, at the time, made the decision to make him a First Officer before he even "showed up."  (Bentley, 34:5-18). Joffrion had not trained him on a computer system change; Martin changed the check ride syllabus; and the normal procedure, after a failed check ride, is a practice-ride and recheck; however, the practice ride was cancelled. (Bentley, 36, 37, 38 and 39). Contrary to Miami Air's contention, Bentley did not need to undergo training as a First Officer, rather the additional training subsequent to the failed Captain check ride was supposed to allow him another recheck as a Captain. *Id.* Subsequent to the failed check ride as a Captain on September 1, 2010, Bentley was only provided one and one-half hours of flight retraining on September 13th and 14th and thirty (30) minutes of training by Joffrion on September 18th to retry his proficiency check as a Captain. *See* P.'s Ex. 3;

2

(Passwater, 10).[2] It was "highly recommended" to Bentley that he perform the recheck ride as a First Officer. (Bentley, 39:8-16; 43-44). Two-failed check rides could have ended his career, so he took the check ride as a First Officer on September 18, 2010, which he passed. (Bentley, 39:20-24). Once Bentley was in the First Officer position, the only way to get back in the Captain's seat is to be selected for upgrade training to Captain from the First Officer pool because Miami Air does not hire Captains off the street. (Gigliotti, 37:21-24). From that point forward, Bentley was the most senior and the oldest First Officer at Miami Air. *See* P.'s Ex. 4, Pilot Seniority Lists.[3]

    4.    The FAA requires that a commercial airline develop a curriculum for requalification training. *See* 14 C.F.R. § 121.915 (e). The requirements provided by Miami Air with Martin's Affidavit are for recurrent training—that is the normal schedule when the pilot is retrained annually.

    5.    Tailskids are a rather common occurrence and were never discussed as a reason not to upgrade Bentley to Captain. The incident described in Martin's affidavit, was never actually discussed in the Pilot Review Board ("PRB") meetings as a reason not to upgrade Bentley, and multiple Captains and First Officers have had tailskids and this does not affect their qualification. (Youngberg, 59:2-25; 60:14-19; 79:7-16; 38:1-16; 39:2-8; 45:8-14; Joffrion, 135:4-6). Bentley received no counseling, reprimands or disciplinary action as a result of the tailskid, which caused no damage.

    6.    As a First Officer, Bentley is second in command of the plane and must take over the aircraft in the event something happens to the Captain, and Bentley was qualified to do that. (Joffrion, 131:19-25). Bentley had even flown two former Presidents, George Bush and Bill Clinton, during his career as Captain. (Bentley, 105:13-17). Martin contends now that leadership

---

[2] Plaintiff moved to have Plaintiff's Exhibits 1 and 2 filed under seal because they contain personal identifiers. The proposed exhibits have been filed under seal pursuant to the CM/ECF procedures.
[3] Defendant produced the exhibits referenced herein and the exhibits are admissible as regularly kept business records and/or admissions of party-opponent.

and technical skills were reasons not to upgrade Bentley to Captain. However, Martin evidently never raised these issues in PRB meetings at the time selections were made and Joffrion did not want to upgrade Bentley allegedly because of failed check rides in the past. (Youngberg, 59:23-25; 60:14-19; 70:1-5). The only recent failed check ride was on September 1, 2010. Joel (Brad) Youngberg ("Youngberg"), who was a member of the PRB, testified that Bentley was a competent Captain prior to his demotion to First Officer and that he was also competent to be selected for Captain upgrade from 2013 to the present. (Youngberg, 14:5-6; 58:18-24). In fact, significantly, contrary to Martin's affidavit that the PRB votes were unanimous, Youngberg voted for Bentley to be upgraded on at least two occasions but gave up and essentially abstained during the most recent meeting when the two management representatives on the PRB, Martin and Joffrion, continued to outvote him without providing a sufficient explanation. (*Id.* 68:7-21).

7. It is undisputed that for whatever period of time Miami Air did not select any First Officers for upgrade to Captain. Bentley was considered each and every time from 2013 to 2016 that the PRB met and was denied the selection for upgrade. *See* P.'s Ex. 1, filed under seal. Bentley was not even required to apply for the Captain upgrade training because all eligible First Officers were considered by seniority for the upgrade. Rather, as Joffrion testified, consideration of the senior First Officers was "automatic." (Joffrion, 78:18-22).

8. At all times relevant to Bentley's claims, the PRB consisted of John Passwater ("Passwater") and Miguel Martin ("Martin"), who served as Chief Pilot at various times, and Steve Joffrion ("Joffrion") who was the Chief of Flight Standards for management and Youngberg represented the union on the PRB. (Martin Aff. [DE 38-3] at ¶2; Passwater Aff. [DE 15-1] refiled as [DE 38-2] at ¶3).

9. From 2013 to 2016, the PRB, as a result of management's vote, selected Carballosa

4

(age 40), Rhatigan, (age 38), Hall (age 55), Ballou (age 53), Cosentino (age 51), DeLucia (age 55), Fruciano (age 45), Haines (age 40), McDonald (age 38), Prince (age 48), McDonagh (age 48), Rodriguez (age 44), Fernandez (30), Gerkovich (age 33), Moore (age 54), Rangel (age 43) and Shepherd (age 55).[4] *See* P.'s Ex. 1 and Ex. 2 filed under seal. All were sufficiently younger than Bentley as a matter of law. No First Officer selected for upgrade, or any pilot for that matter, had as much prior experience as a Captain as Bentley, particularly with the planes flown by Miami Air pilots. (Joffrion 132:19-24; P's Ex. 5; P Ex. 6; Bentley, 73:7-13; 114:5-16). Despite the selection of these First Officers for upgrade to Captain, many of them had performance issues. For example, Joffrion failed Ballou on a proficiency check on October 19, 2007, while he was a First Officer, yet he was given an opportunity to upgrade to Captain in the September 2014 selection process. *See* P.'s Ex. 7; P's Ex. 1 and 2, filed under seal; (Joffrion, 92:7-20). In 2009, Carballosa failed Captain training yet he was selected a second time by the PRB in July 2013. *See* P.'s Ex. 8; P's Ex. 1, filed under seal; (Passwater, 14:3-23). Cosentino, who was selected in the PRB process in May 2015, failed a proficiency check in April 2008 and yet was selected for upgrade in 2015. *See* P.'s Ex. 9; P's Ex. 1, filed under seal. Moore failed a proficiency check on November 11, 2014 and was selected two years later for upgrade to Captain in the August 2016 selection process.[5] *See* P.'s Ex. 10; P's Ex. 1, filed under seal. Hall was removed from Captain training in 2009 due to "situational awareness" issues. P. Ex. 11.

    10.    Bentley's training records, if reviewed, establish that he had not failed any proficiency check or other recurrent training as a First Officer since September 2010. *See* P.'s Ex.

---

[4] Only the last name of the pilot will be referred to for convenience and the age referenced is at the time of selection for upgrade to Captain.
[5] Moore evidently was not successful in passing the Captain training, but Bentley was not even given the opportunity to try.

12; (Joffrion 86:12-14; Bentley 51-52:14-20).  Joffrion brought up Bentley's former failed check ride, but Joffrion, Passwater or Martin never discussed the tailskid as a reason to deny Bentley the upgrade to Captain. (Youngberg, 59:2-25; 60:14-19; 79:7-16). Joffrion admitted that Bentley's only failed check ride of which he was aware occurred more than ten (10) years ago.  (Joffrion, 36:4-12). Martin, once he was a PRB member, went along with Joffrion and did not give any specific deficiencies. (Youngberg, 69:17-22; 70:1-5). Youngberg also testified that Bentley's upcoming retirement was also discussed in the PRB meetings. (Youngberg, 60:22-23).

      11.    Plaintiff need not respond to Miami Air's self-serving statement on the ultimate fact to be proven in the case. The PRB votes were not unanimous. Youngberg voted for Bentley to be upgraded on at least two occasions while Passwater was on the PRB but gave up and essentially abstained during the most recent meeting when the two management representatives on the PRB, Martin and Joffrion, continued to outvote him without providing a sufficient explanation. (Youngberg, 68:7-21).

      12.    Bentley is not aware of any ageist comments by the PRB or management. Bentley bases his claim on the fact that he was the oldest and most senior officer, most qualified as a Captain and that all substantially younger First Officers were chosen for upgrade to Captain despite the fact that many of them had failed check rides or had previous issues flying.  Bentley also believes he was discriminated against because he was pigeon-holed into a First Officer position when he returned in 2010 rather than adequately trained to return to the Captain seat.  *See* paragraphs above.

      13.    Because the PRB meetings are confidential, no one knows what procedure the PRB uses to select Captain candidates. Bentley was not required to complain or to file a grievance.

      14.    Despite Miami Air's contention that Bentley did not ask for feedback about his not

6

_____
GALLUP AUERBACH • 4000 Hollywood Blvd, Suite 265 South • Hollywood, FL 33021• Tel: 954.894.3035 • Web: gallup-law.com

being upgraded, Bentley, in fact, sent an email to the PRB members on December 22, 2015 making his case for being upgraded to Captain and complaining that very junior pilots were selected for upgrade. P. Ex. 13; (Bentley, 114, 1-23). Bentley received no reply. (Bentley, 120:3-6).

15.   Bentley was not required to complain to Miami Air; however, as mentioned in paragraph 14, he did complain on December 22, 2015.

16.   Miami Air is playing fast and loose with the term pilot. Captains and First Officers are pilots. Peter Priest was returned as a First Officer, not a Captain. *See* P. Ex. 4, Pilot Seniority Lists 2012-2017. Mr. Priest retired as a First Officer in September 2012. *See* P. Ex. 2, filed under seal. Likewise, Miami Air is equally disingenuous regarding John Feliu because he also was returned to a First Officer position, not a Captain position. *See* P. Ex. 14. The remainder of the pilots mentioned in Martin's Affidavit attachment, except for Youngberg, Robinson, Hopkins and Lane, were former management pilots and owners of Miami Air, as such, they would not be appropriate comparators. P. Ex. 2 filed under seal; P. Ex. 4 Pilot Seniority Lists 2012-2017. In addition, Youngberg, Robinson, Hopkins and Lane are not comparators as they were Captains the entire time that Bentley sought to be upgraded to Captain. Hopkins and Robinson retired in 2015. *Id.*

        Respectfully submitted,

        **GALLUP AUERBACH**
        *Counsel for Plaintiff*
        4000 Hollywood Boulevard
        Presidential Circle-Suite 265 South
        Hollywood, Florida 33021
        t: (954) 894-3035
        f: (954) 894-8015
        e: dgallup@gallup-law.com

        By:  /s/ Dana M. Gallup
            DANA M. GALLUP
            FBN: 0949329

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 12, 2017, I electronically served the foregoing document on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Dana M. Gallup
DANA M. GALLUP
Florida Bar No.: 0949329

GALLUP AUERBACH • 4000 Hollywood Blvd, Suite 265 South • Hollywood, FL 33021• Tel: 954.894.3035 • Web: gallup-law.com

**SERVICE LIST**
**BENTLEY V. MIAMI AIR INTERNATIONAL, INC.**
**CASE NO.: 16-cv-24607-HUCK/OTAZO-REYES**

| | |
|---|---|
| Dana M. Gallup, Esq. | Harry N. Turk, Esq. |
| FBN: 949329 | FBN: 120596 |
| **GALLUP AUERBACH** | **HARRY N. TURK, P.A.** |
| 4000 Hollywood Boulevard | One Southeast 3rd Avenue |
| Suite 265 South | Suite 2900 |
| Hollywood, Florida 33021 | Miami, FL 33131 |
| E: dgallup@gallup-law.com | E: hturk@turklaw.org |
| T:     954.894.3035 | T: 305.350.2223 |
| F:     954.894.8015 | F: 305.350.2225 |
| | |
| Jacob K. Auerbach, Esq. | Judson L. Cohen, Esq. |
| FBN: 084003 | FBN: 0948748 |
| **GALLUP AUERBACH** | **WEINSTEIN & COHEN, PA** |
| 4000 Hollywood Boulevard | 14125 NW 80th Avenue |
| Suite 265 South | Suite 400 |
| Hollywood, Florida 33021 | Miami Lakes, FL 33016 |
| T: 954-894-3035 | E: jcohen@weinsteincohen.com |
| F: 954-894-8015 | T: 305-374-1011 |
| jauerbach@gallup-law.com | F: 305-373-8127 |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| | |
| *CM/ECF* | *CM/ECF* |

GALLUP AUERBACH • 4000 Hollywood Blvd, Suite 265 South • Hollywood, FL 33021• Tel: 954.894.3035 • Web: gallup-law.com